## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| DEANGELO THOMAS-EL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NICOLE FRANCIS, et al., )<br>)<br>Defendants. ) | Case No. 4:20-CV-589-SNLJ |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff DeAngelo Thomas-El, pro se, is a prisoner within the Missouri Department of Corrections ("MDOC").  He brings this lawsuit under 42 U.S.C. § 1983, alleging that defendants Nicole Francis and Jason Lee violated his constitutional rights by denying him basic hygienic supplies of toothpaste, soap, and deodorant.  Plaintiff and defendants filed competing motions for summary judgment. *Compare* [Doc. 58] (plaintiff's) with [Doc. 62] (defendants').  Plaintiff filed a response to defendant's motion.  [Doc. 63.]  After some delay, defendant filed a response to plaintiff's motion.  [Doc. 68.]   Plaintiff did not file a reply to defendants' response [Doc. 68], and the time for doing so has now passed.  For reasons stated below, plaintiff's motion will be granted in part and denied and part, and defendants' motion will be granted in part and denied in part.  Furthermore, plaintiff's motion to Deny the Use of Deposition of Plaintiff DeAngelo Thomas-El is denied as moot.

I.      **Plaintiff's Motion to Deny the Use of Deposition of Plaintiff DeAngelo Thomas-El**

Plaintiff filed a motion to deny defendants the use of plaintiff's deposition because, as plaintiff argues, he cannot afford to buy a transcript of the deposition and it would be unfair for defendants to have use of the deposition but not plaintiff.  [Doc. 59.]  In short, if plaintiff cannot have it, nobody should have it.   Plaintiff attached a full copy of the deposition to his response to defendant's motion for summary judgment.  [Doc. 63.]  Thus, plaintiff has obtained a copy of the deposition transcript.  Therefore, plaintiff's motion will be denied as moot.

II.     **Plaintiff's and Defendants' Motions for Summary Judgment**

        **A.  Factual Background**

The discussed facts are undisputed unless otherwise indicated.  At all times relevant to this action, plaintiff was an inmate with MDOC and confined in the administrative segregation housing unit at Potosi Correctional Center in Potosi, Missouri.  Plaintiff never had more than $2.20 per month in his offender account, and plaintiff needed but could not afford basic hygiene items.  Plaintiff contends that he was an indigent offender under the prison's policy because he could not afford to buy hygienic items. Defendants admit that plaintiff was in need of basic hygiene items and could not afford basic hygiene items, but they contend that plaintiff was not an indigent offender under the institutional policy.  [Doc. 62-2 at 1–2, 5; Doc. 68 at 2.]

Under the policy, "Inmates may request basic hygiene items if: 1) The inmate has not had funds within the previous 30 days, [and] 2) the inmate has spent his/her monthly wage on *needed legal postage or legal supplies*, is in need of basic hygiene items and does not have funds to pay for basic hygiene items." [Doc. 62-6] (cleaned up) (emphasis added). According to defendants:

> Under institutional policy, an inmate may only request basic hygiene items if the inmate has not had funds within the past 30 days, the inmate has spent their entire monthly wage on *necessary* legal supplies, and the inmate is in need of basic hygiene items but does not have the funds to pay for them. While Plaintiff had no more than $2.20 in his offender account per month and was in need of basic hygiene items, under policy Plaintiff was not considered indigent because he spent all of his monthly wage on *discretionary* legal filing fees. Therefore, as discussed in his Grieve Appeal Response, Plaintiff was not entitled to request basic hygiene items. (Exhibit D, Missouri Department of Corrections Access to Basic Hygiene Items Institutional Policy 8-6.1(III)(B)(1)-(2); Exhibit F, Grievance Appeal Response dated March 16, 2020).

Plaintiff filed a complaint that defendant Francis did not give him hygiene items because he was indigent. [Doc. 58-5 at 4.] In response to this complaint, investigating staff stated that "per policy [plaintiff] did not qualify for indigent status. State and Federal filing fees are considered *discretionary* spends." *Id.* Plaintiff filed a grievance, and reviewing officials gave a similar response: "Information submitted to this review indicates [plaintiff has] incurred debts owed to state or federal filing fees or other discretionary spending which have been attached to [plaintiff's] offender funds. Such discretionary

spending is not cause for spending assistance." [Doc. 58-6 at 2.] Thus, under the policy, plaintiff did not qualify for "indigent status," so the prison did not give him hygiene items.[1]

On September 3, 2019, plaintiff sent a letter to defendant Francis requesting basic hygiene supplies, stating that he had "enough soap, toothpast[e] and deodorant to last a couple weeks" but he was worried of running out. [Doc. 58-3.]

Plaintiff alleges that on September 13, 2019, while defendant Francis made her rounds, he asked about his request for hygiene items and she said, "you're beat because you spend all your money on filing fees."[2] Defendant Francis does not deny that she talked with plaintiff, but only denies the specific wording that she told plaintiff he was "beat." [Doc. 62-7 at 2.] Defendant Francis does not recall any specific conversation, but that if she did speak with plaintiff, she would have told him that he may not qualify for free hygiene items because he did not meet the institutional definition of "indigent." *Id.* At the very least, some conversation took place and defendant Francis explained why plaintiff was not entitled to free hygiene items.

---

[1] MDOC apparently maintains a distinction that unlike "needed postage and legal supplies," MDOC is not constitutionally required to provide enough funds in a monthly allowance to pay for "discretionary" filing fees. *See Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996). In any event, defendants do not rely on this distinction in either of their briefs. Instead, defendants focus entirely on the elements of plaintiff's Eighth Amendment cruel and unusual punishment action, that is, whether plaintiff faced a substantial risk of serious harm and whether defendants acted with deliberate indifference in failing to address that risk.

[2] According to plaintiff, "beat" is a term "they use when they say you ain't going to get nothing." [Doc. 62, Ex. E at 10.]

On October 30, 2019, while defendant made her rounds, plaintiff asked defendant Francis about the status of his requested hygiene items.  Plaintiff asserts that defendant Francis told him, "you're beat, I already told you that."  Defendant Francis again denies ever telling plaintiff he was "beat."  She also denies that she denied plaintiff basic hygiene items.  Defendant Francis's employment at the Potosi Correctional Center ended on December 19, 2019.

On December 23, 2019, plaintiff sent a letter to defendant Lee asking for basic hygiene items.  On January 24, 2020, plaintiff sent defendant Lee a letter asking for hygiene items and cited *Jones v. Huffman-Phillips* as case law showing it was unconstitutional to deprive plaintiff of hygiene items long-term.  [Doc. 58-4] (citing No. 1:12-CV-70-LMB, 2013 WL 5442906 (E.D. Mo. Sept. 30, 2013), *on reconsideration in part*, No. 1:12-CV-70-LMB, 2014 WL 651360 (E.D. Mo. Feb. 19, 2014)).  Plaintiff asserts that, on January 29, 2020, he asked defendant Lee about the requested items and defendant Lee responded, "you're not indigent because you spend your money on filing fees."  Defendant Lee does not know if he was working that day, but denies he ever told plaintiff that he was not indigent for spending his money on filing fees.

Plaintiff claims that defendants had actual knowledge of the law governing an inmate's right to have basic hygienic care because he asserted that right in his informal resolution requests and grievances and cited to case law.  [Doc. 58 at 3.]  Defendants deny having any knowledge of plaintiff's request for hygiene products or that they knew of the IRRs.  Defendant Francis says she did not respond to the IRR because it was not her duty to do so.  [Doc. 62-4 at 2.]  Though defendants deny the claim that they personally denied

5

plaintiff access to hygiene items, they do not deny plaintiff's claim that he was without hygiene items roughly between September 17, 2019 through January 29, 2020: a period of four and one half months split between the two defendants.  [Doc. 62-2 at 3–4.]   Plaintiff also alleges that he even went longer without hygiene items, even into January 2021, but plaintiff does not claim that the two defendants were responsible for his lack of access to hygiene products going beyond January 2020.  [Doc. 62-7 at 24.]  Defendants deny that they ever actively blocked plaintiff's access to hygienic items.  Both parties agree that defendants never gave plaintiff any of his requested hygiene items.

Plaintiff claims that he had to perform oral and anal sex acts on other inmates to obtain hygienic items.  Defendants do not deny whether plaintiff actually engaged in such sex acts, but they do deny that they had personal knowledge that plaintiff would perform sex acts to get hygiene items.  [Doc. 62-2 at 6.]   Regardless, all parties recognize that plaintiff did not have deodorant or toothpaste for months.  [Doc. 62-2 at 1–2.]  But plaintiff was given one small bar of soap, which was enough soap for plaintiff to shower once per week and to wash his hands after using the bathroom.  [Doc. 62-7 at 12] (plaintiff's deposition).  As a result of having insufficient access to hygienic items, he had body odor, toothaches, and dental cavities.  Though plaintiff got dental care that helped with the toothaches, he still suffered cavities in his teeth.

Additionally, plaintiff alleges that he was beat up by a cellmate over his body odor, "resulting in me having a swollen jaw, migraine headaches, and being unable to chew food for approximately six days."  [Doc. 1 at 9.]  In his deposition, plaintiff alleges that he was "beat up twice" by cellmates because his body odor was so bad.  [Doc. 62-7 at 24.]  He

also testified that he suffered discomfort from having to perform oral and anal sex for toothpaste, deodorant, and soap. *Id.* at 24–25. Defendants do not contest these facts.

## B. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587;

*Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). This motion is fully briefed. All parties have access to plaintiff's medical records and all parties have had the chance to submit affidavits. Plaintiff has not articulated any facts indicating that further discovery is necessary to support his claim. *See Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997). The Court determines this motion is ripe for summary judgment.

When parties file cross motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). "The usual Rule 56 standard applies to cross-motions for summary judgment." *Int'l Brotherhood of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).

### C. Discussion

In a conditions of confinement case, such as this one, a prison official is liable for violating an inmate's Eighth Amendment rights when two requirements are met: one objective and one subjective. First, a plaintiff must show that the alleged deprivation was

objectively sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This requirement is met if the alleged deprivation denied plaintiff "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Second, a plaintiff must show that the defendant acted with deliberate indifference, meaning that the defendant actually knew of or should have known and deliberately disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 834; *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995).

### 1.   The Alleged Constitutional Violation

"Generally, whether a constitutional violation occurs is a question of law," but whether "the eighth amendment has been violated is a mixed question of fact and law." *Porth v. Farrier*, 934 F.2d 154, 156 (8th Cir. 1991). The Eighth Amendment prohibits punishments that are unnecessary and wanton infliction of pain, which include inflictions that are totally without penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (citing cases). Certain conditions that "deprive inmates of the minimal civilized measure of life's necessities . . . . could be cruel and unusual under the contemporary standard of decency." *Id.* at 347 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). "[A] long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (citing *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). Though inmates cannot expect the amenities or conveniences of hotel service, they are "entitled to reasonably adequate

sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard*, 887 F.2d at 137.

Though routine discomfort and temporarily harsh conditions do not give rise to a violation, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), long-term, repeated denials of adequate hygiene supplies can give rise to an Eighth Amendment violation. *Myers*, 101 F.3d at 544. The length of time an inmate suffered the deprivation is crucial in determining whether there has been a constitutional violation. Filthy living conditions may be tolerable for a few days, *Howard v. Precythe*, No. 4:21-CV-730-MTS, 2022 WL 670130 (E.D. Mo. Mar. 7, 2022) (depriving plaintiff of a shower for 14 days did not give rise to a constitutional violation), but intolerable over weeks and months. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)) (noting plaintiff lived with filthy conditions for two years, including a cell covered with human waste; a urine-stained mattress for ten months; and a denial of laundry service for five months). Thus, it has become well established among the district courts of this Circuit that "a longterm, repeated deprivation of adequate hygiene supplies violates the Eighth Amendment rights of prison inmates." *Jones-El v. Godert*, No. 2:18-CV-65-JMB, 2019 U.S. Dist. Lexis 213247, at *41 (E.D. Mo. Dec. 15, 2019) (citing *Myers*, 101 F.3d at 544).

In *Myers*, inmates complained that they were given too little "idle pay" to pay for both personal hygiene items and legal supply fees, so they opted to purchase hygienic equipment and forgo legal supplies. 101 F.3d at 543. Here, the situation appears reversed: plaintiff could not afford both his admittedly expensive legal filing and supply fees and to pay for his personal hygiene items, so he opted to pay for the legal supplies in lieu of

hygienic supplies.  This Circuit recognizes the precarious situation of an inmate who, due to indigency, must choose between good hygiene and pursuing legal claims.  *Cf. Myers*, 101 F.3d 542 (holding that there was factual dispute whether inmate was "forced to choose between being clean and pursuing legal claims").

Under this Circuit's case law—that long-term deprivation of basic hygiene items is a constitutional violation—plaintiff has already made out a claim for a constitutional violation.  *Thomas-El v. Francis*, No. 4:20-CV-589-SNLJ, 2020 WL 4597124 (E.D. Mo. Aug. 11, 2020); *see also Jones v. Huffman-Phillips*, No. 1:12-CV-70-LMB, 2013 WL 5442906, at *6 (E.D. Mo. Sept. 30, 2013); *Jones-El v. Godert*, 2019 U.S. Dist. Lexis 213247.  The government's argument that plaintiff "does not allege any deprivation implicating a 'minimal civilized measure of life's necessities,'" [Doc. 62-1 at 7] is wrong. Plaintiff already has sufficiently alleged a deprivation that goes beyond mere discomfort. *See Thomas-El*, 2020 WL 4597124, at *3.  The only remaining question is whether there is a disputed fact issue as to the constitutional violation or—if there be no dispute of material facts—whether this Court should grant summary judgment to defendants or plaintiff.

First, the Court agrees with defendants that plaintiff's lack of deodorant and soap does not amount to a constitutional violation.  In fact, plaintiff testified that he was given one small bar of soap per week, which allowed him to take one shower per week and wash his hands as needed.   Though this did not enable plaintiff to shower as often as he would have liked, this inconvenience only amounts to the "routine discomfort" that does not result in a constitutional violation.  It would be a different story if plaintiff had no access to soap

11

over the course of five months, but the facts show that plaintiff could occasionally shower with soap and wash his hands as needed.  Even though plaintiff had body odor stemming from a lack of soap and deodorant, body odor alone is not so egregious an injury to be cruel and unusual punishment.  *See Avery v. Ferguson*, Civ. No. 8-5091, 2010 WL 3829433, at 12–13 (W.D. Ark. Sept. 3, 2010), *report and recommendation adopted*, Civ. No. 8-5091, 2010 WL 3829423 (W.D. Ark. Sept. 24, 2010) (holding that officials did not violate inmate's rights simply because he could not shave or cut his hair when he wanted to).

Plaintiff claims that he was beaten up because of his body odor and that he had to engage in sex acts for deodorant, but he admits that any sex acts that he performed were voluntary and cannot be traced to defendants' lack of giving him soap or deodorant. Furthermore, it is questionable whether these alleged sex acts actually occurred between September 2019 and January 2020, the time period plaintiff complains of.  In fact, plaintiff's attached affidavit suggests that he did not begin his sex-for-items transactions until July 2020, which is well outside the complained-of time period.  [Doc. 58-2 at 2–3.]

Tellingly, there is no  evidence—outside of plaintiff's own unsubstantiated claims— that shows that plaintiff was beaten up specifically for body odor or that these beatings are attributable to defendants' conduct.  Even then, plaintiff failed to put on any evidence to indicate that defendants knew or should have known that, without access to deodorant, plaintiff's body odor would become so bad that his cellmates would beat him up.  Although plaintiff alleges that he sent a letter to defendant Francis on September 16, 2019, stating that he would have to resort to prostitution to obtain needed-hygiene items [Doc. 1 at 17], he failed to provide a copy of the letter to verify these claims.  Additionally, defendants

deny having any personal knowledge that plaintiff would engage in sexual favors to obtain hygiene items, nor has plaintiff shown any evidence that defendants had such knowledge. *See Jones*, 2013 WL 5442906, at *7 ("[P]laintiff has failed to establish a violation of his constitutional rights as a result of the MDOC Defendants' failure to provide deodorant or shower shoes. Plaintiff offers no evidence of any damages resulting from not having these items.").

Accordingly, the court will only consider whether plaintiff is entitled to summary judgment on being denied toothpaste for the alleged tooth ache and cavity.  Necessary hygiene items include toothpaste. *Myers*, 101 F.3d at 543.  "The denial of basic hygiene items such as a toothbrush and toothpaste [for months] transcends mere discomfort or temporary adverse conditions." *Jones v. Huffman-Philips*, 2013 WL 5442906, at *7; *see also Jones-El v. Godert*, 2019 U.S. Dist. LEXIS 213247, at *38–41.  Plaintiff alleges that he was denied toothpaste for four and one half months and, consequently, he suffered from toothaches and cavities.  He provides a medical record showing his complaints of tooth decay and cavities.  [Doc. 58-8.]  Defendants admit that a lack of toothpaste caused plaintiff's injuries in their uncontroverted statement of material facts: "Plaintiff further sustained toothaches *as a result of not having toothpaste*."  [Doc. 62-2 at 7] (emphasis added).  Defendants also admit that plaintiff suffers from cavities, an ongoing injury as a result of not having toothpaste. *Id.* at 8.  These admissions put the issue beyond dispute.

In arguing that plaintiff did not suffer any injury from denial of toothpaste, defendants cite to *Myers v. Hundley* for the proposition that "inmates must specifically assert that the amounts left over from their [prison] allowances after purchasing personal

necessities caused actual injury [because of lack of access to hygiene items]." [Doc. 68 at 10] (citing 101 F.3d 542, 544 (8th Cir. 1996)). *Myers* was not just a case about an insufficient amount of inmate allowances, but that denying inmates access to hygiene products is a Constitutional violation for whatever the reason: including denying inmates such hygiene products because they spent their allowances elsewhere. *See Jones*, 2013 WL 5442906, at *9–10 (citing *Myers*, 101 F.3d at 544) (denying defendant's motion for summary judgment because plaintiff had alleged enough facts to establish that denial of toothpaste and toothbrush led to "great pain to his teeth, deterioration of his teeth and gums, looseness of his teeth, bleeding teeth and gums, potential loss of his two front teeth"). Also, plaintiff specifically asserted that amounts leftover from his prison account were insufficient to buy both legal supplies and basic hygiene items, a fact that defendants admit. [Doc. 62-2 at 2] ("[Plaintiff] had no more than $2.20 in his offender account per month and was in need of basic hygiene items. . . ."); [Doc. 68 at 2] ("[Plaintiff] had no more than $2.20 in his offender account per month and was in need of basic hygiene items. . . ."); [Doc. 58-1] (plaintiff's sales history account sheet, showing that he spent his money on legal supplies).

Defendants argue that cavities and toothaches posed no risk of substantial harm to plaintiff. [Doc. 68 at 11.] This Court disagrees. "[A] tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (citing 1993 Public Health Reports 1993, U.S. Dept. of Health and Human Services, Pub. No. 108: 657–672, *Toward Improving the Oral*

*Health of Americans: an Overview of Oral Health Status and Care Delivery* 3).
"Consequently, because a tooth cavity will degenerate with increasingly serious
implications if neglected over sufficient time, it presents a 'serious medical need.' . . ." *Id.*
at 137.  A lack of access to toothpaste can create a serious medical need.  *Cannata v. Hoag*,
No. 3:21-CV-5307-BJR-DWC, 2022 WL 2134496, at *6–8 (W.D. Wash. Mar. 8, 2022)
(discussing the objectively serious medical need for toothpaste).  Critically, defendants
concede that plaintiff's toothaches and cavities were caused by a lack of access to
toothpaste [Doc. 62-2 at 7; Doc. 68 at 8.]  Plaintiff testified that he needed medical
treatment for his tooth problems, which defendants do not dispute.  He has provided a
record showing that he received medical treatment for his tooth problems, which
defendants do not dispute.  [Doc. 58-8.]

Later on, defendants argue that plaintiff failed "to provide any evidence that the lack
of toothpaste during the time period alleged in his Complaint caused such cavities."  [Doc.
62-1 at 8.]  This is true, but irrelevant, because defendants have already admitted that a
lack of toothpaste caused such cavities.  An admitted fact shows that there is no dispute as
to that fact.  E.D.Mo. L.R. 4.01(E) ("All matters set forth in the moving party's Statement
of Uncontroverted Material Facts shall be deemed admitted for purposes of summary
judgment unless specifically controverted by the opposing party.").  Thus, plaintiff did not
need to present any evidence on causation because the parties do not dispute the fact that
plaintiff got cavities and toothaches, nor do they dispute that plaintiff's injuries came from
lack of toothpaste.

Neither does the prison's labeling of plaintiff as "non-indigent" shield defendants from liability.  A prison following its own policy to deny basic hygiene items to inmates who do not meet that prison's definition of "indigent" does not allow the prison to dodge its Constitutional duty to provide basic hygiene items to inmates.  *See Myers*, 101 F.3d at 544 ("Prisons may either regularly provide [hygiene] supplies to inmates *free of charge*, or they may give inmates a sufficient allowance with which to buy them [while still being able to pay for legal mail.]") (emphasis added).  In any event, the defendants do not argue otherwise.

Under this Circuit's standard, prison officials are not required to furnish any and all hygiene items to inmates and in whatever quantities that inmates demand. For instance, defendants did not violate plaintiff's Constitutional rights when plaintiff went without extra soap or deodorant, even if this deprivation was unseemly.  But prison officials must give inmates those bare necessities to maintain their hygiene and prevent illness: toothpaste being one of them.  *See Howard*, 887 F.2d at 137 (holding that denial of basic hygiene and sanitation are inconsistent with standards of decency, not just mere inconveniences); *Myers*, 101 F.3d at 543–44.

In sum, defendants put plaintiff in the position of having to choose between his legal rights and his personal hygiene.  *See Myers* 101 F.3d at 542.  Whatever prison policy may be with regards to indigency, plaintiff was still entitled to basic hygiene supplies to prevent the risk of injury from tooth decay, aches, and cavities.  Because there is no dispute of materials facts that 1) defendants denied plaintiff toothpaste and 2) plaintiff suffered toothaches and cavities as a result, there is no triable issue of fact on this point, and only a

16

matter of law to be decided.  In accordance with the law of this Circuit, defendants caused a substantial risk of serious harm when they deprived plaintiff of toothpaste for months at a time and that lead to toothaches and cavities.

### 2. Defendants' Deliberate Indifference

There remains the issue of whether defendants knew or should have known of an excessive risk to plaintiff's health or safety.  *Farmer*, 511 U.S. at 834.

A litigant need not prove that supervisors had actual knowledge of constitutional violations, "but whether they knew or should have known of them."  *Howard*, 8878 F.2d at 138.  A single incident or a series of isolated incidents is typically insufficient to assign liability, but a repeated pattern of incidents can support a finding of reckless disregard for constitutional rights.  *Id.* at 138 (citing *Williams v. Willits*, 853 F.2d 586, 588–89 (8th Cir. 1988)).

Both defendants claim that they did not have a culpable state of mind.  However, the uncontroverted facts indicate that plaintiff sent letters to both defendants highlighting his need for hygiene items.  Likewise, plaintiff indicated he had several conversations with both defendants where he made a request for hygiene items, including toothpaste. Defendants deny that they ever personally denied his request, but they do not deny that plaintiff made such requests.  Plaintiff alerted defendant Francis to his need of toothpaste on three separate occasions: a September 3, 2019 letter, a September 13, 2019 conversation, and another conversation on October 30, 2019.  There may have been another letter sent on September 16, but this remains unproven.

17

Later, plaintiff alerted defendant Lee to his need for toothpaste on December 23, 2019 and again in January 24, 2020. Defendant Lee testifies that he has no knowledge of speaking with plaintiff, but this does not act as a denial that such conversations took place, only that defendant Lee does not remember those conversations. This evidence goes beyond mere allegations that defendants knew of the problem. Taking the evidence in the light most favorable to the plaintiff, plaintiff has supported his claim with specific evidence showing that he alerted defendants to his lack of hygiene items, and that defendants chose not to respond to his requests.

Just because defendants knew that plaintiff was without toothpaste is not enough for plaintiff to prevail on summary judgment. Rather, plaintiff must also show that the defendants should have drawn an inference that a substantial risk of serious harm existed. *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548–49 (8th Cir. 2010).

Recognizing the competing claims for summary judgment, the Court must consider each side's claims by placing the facts in the light most favorable to them to see if there is any dispute as to the subjective knowledge of the defendants. According to the facts in the light most favorable to the plaintiff, both defendants should have known that plaintiff faced the risk of tooth decay and illness without access to toothpaste. Defendants were on notice by plaintiff's letters and conversations that he needed toothpaste, and their disregard for that need was deliberate indifference.

But if the facts are read in the light most favorable to the defendants, then their conduct is only merely negligent, not deliberately indifferent, because they lacked subjective knowledge that their conduct endangered plaintiff. Defendant Francis testifies

that she does not remember denying plaintiff any personal hygiene items and that if she did not give plaintiff any, it was because she did not have access to them. [Doc. 62-4 at 2–3.] Defendant Lee testifies that he has no knowledge of ever speaking with defendant [Doc. 62-5 at 2.] He likewise denies ever personally denying plaintiff access to hygiene items. [Doc. 68 at 7.] Accordingly, both defendants testify that they lacked subjective knowledge that plaintiff faced a substantial risk of serious injury.

There is a triable issue of fact whether the defendants subjectively knew and consciously disregarded a known risk of plaintiff going without toothpaste for extended periods. Therefore, summary judgment is improper as to both motions on this second element. Both motions will be denied, and it will be up to the trier of fact to determine whether defendants had a culpable state of mind.

### D. Defendants' Qualified Immunity

Defendants assert that they are entitled to qualified immunity. Courts apply a two-part test in assessing a government official's claim of qualified immunity, first asking whether the plaintiff demonstrated a violation of a constitutional right and then asking whether that right was clearly established at the time of the violation. *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010). "[T]he Supreme Court has repeatedly instructed that clearly established law ... must be particularized to the facts of the case." *Boudoin v. Harsson*, 962 F.3d 1034, 1039 (8th Cir. 2020) (internal quotation marks and quoted cases omitted). "To overcome the defendants' qualified immunity claims, the plaintiffs must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the

deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (cleaned up).  In determining what confinement conditions violate the Eighth Amendment, "common sense is sometimes helpful."  *Howard v. Adkison*, 887 F.2d 134, 140 (8th Cir. 1989).

Defendants are not entitled to qualified immunity.  First, as discussed, a deprivation of toothpaste that leads to tooth aches and cavities is a violation of Eighth Amendment rights.  Second, the law of this Circuit is well-established as to that right: a months-long deprivation of basic hygiene supplies is a constitutional violation, especially when the deprivation of such supplies can lead to foreseeable risk of injury.  *Jones v. Huffman-Phillips*, 2013 WL 5442906, at *9–10 (citing *Whittington v. Ortiz*, 307 Fed. Appx. 179, 189 (10th Cir. Jan. 13, 2009) (unpublished); (Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir.1996)); *see also Jones-El v. Godert*, 2019 U.S. Dist. LEXIS 213247, at *38–41.  There may be no constitutional right to "Comet" or "Lysol", but "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, *particularly over a lengthy course of time*."  *Howard*, 887 F.2d at 137 (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986)) (emphasis added).  The facts, construed in the light most favorable to the plaintiff, indicate a violation of an established constitutional right.

### III.    Conclusion

Plaintiff had a constitutional right to have his basic hygienic needs met.  Plaintiff has failed to present enough facts to show a reasonable dispute on whether his lack of extra

soap and deodorant violated his constitutional rights.  Plaintiff's request for summary judgment on that point is denied, and defendants' is granted.  There is no dispute of material fact that plaintiff went without toothpaste and suffered because of that.  Therefore, summary judgment on the first element of plaintiff's claim is granted as to the deprivation of toothpaste, and defendants' is denied.  The only remaining dispute is whether defendants knew or should have known of the constitutional violation.  In reviewing the competing motions for summary judgment, a dispute of material facts emerges as to defendants' level of knowledge, and so summary judgment on this issue is improper.  Therefore, both motions as to the second element will be denied.  Finally, as discussed, defendants are not entitled to qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to Deny the Use of Deposition of Plaintiff [Doc. 59] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [Doc. 62] is **GRANTED** in part and **DENIED** in part.

**IT IS FINALLY ORDERED** that plaintiff's motion for summary judgment [Doc. 58] is **GRANTED** in part and **DENIED** in part.

Dated this  17th  day of November, 2022.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE